HEARD APRIL TERM, 1876.

## CALMES vs. McCRACKEN & KOON.

A note given to a third person by the purchaser of land for money borrowed to pay the purchase money is not "an obligation contracted for the purchase" of the homestead within the meaning of the first proviso of Article II, Section 32, of the Constitution of the State.

Where one, being indebted by bond and mortgage to secure the purchase money of land, pays the debt with money borrowed from a third person, and gives his note to such third person expressing on its face that the money had been so paid, and also gives to the lender his mortgage of the land to secure the payment of the note, such new mortgage is not a substitute for the first, and does not debar the widow of her right of dower in the mortgaged premises.

A mortgage given by the husband precludes his widow from taking the homestead exemption, except as to any surplus that may remain after satisfying the mortgage debt.

BEFORE MOSES, J., AT NEWBERRY, SEPTEMBER, 1874.

This was an appeal from the Probate to the Circuit Court. The case is so fully stated in the opinion of this Court as to render any further statement here unnecessary.

. *Moorman & Schumpert,* for appellant, filed the following points and authorities:

1. The McCracken mortgage is no bar to appellant's right of entire dower in the land.

2. Being a new mortgage given by the vendee, appellant's husband, to secure the amount borrowed by him from a third and disinterested party, with which he paid his original mortgage given for the credit portion of the purchase money for the land more than a year before, it cannot be construed as operating to make the seizin of the appellant's husband in the land such a transitory seizin as to bar her right of entire dower therein. Although it is the "firmly and thoroughly established principle of law," that when the husband's seizin is for a *transitory* instant only, as when the same act which gives the husband the estate also conveys it out of him, or when he is the mere conduit employed to pass the title to a third person, no right of dower arises, yet in the case where a deed for lands is executed and purchaser gives back a mortgage on the land to secure any part of the purchase money, even the deed and mortgage, in order that the mortgage should bar dower, must be simultaneously executed and be regarded as *part of the same contract,*

take effect at the *same time,* and constitute a single act, and result in clothing the purchaser with seizin for a transitory instant only.—1 Scrib. on Dower, 259, § 36; *id.*, 261, § 39.

The same author adds: "One important element of the rule above considered" (the rule making the seizin of the purchaser who gives a mortgage for the purchase money transitory) "should here be noticed. In order to deprive the wife of her dower the claim of the mortgagee must proceed from the same transaction that gave the husband his seizin. Therefore, when a mortgage was given by a vendee to the vendor to secure the purchase money of the lands mortgaged and *afterwards* a third person discharged the mortgage and took a new mortgage to himself from the vendee to secure the repayment of the money advanced for that purpose, it was held that the wife of the vendee was entitled to dower." Also, as showing the strictness with which this limitation of the rule is enforced: "When it is claimed in defense to an action for dower that a mortgage for the purchase money was executed by the husband simultaneously with the delivery to him of the deed, the *onus* rests upon the defendant of showing that the two instruments constituted but one transaction."—*Id.*, pp. 264–5, § 47.

3. Nor can it operate as a substitution and continuance of the original mortgage to the executors.

It is but an incident of the note. The note is altogether different from the original bond. It is a contract between different parties, given to a different payee, of a different date, payable at a different time, bearing a different and larger interest, for a different and larger amount, and for an entirely new and different consideration, at least to amount used to pay expenses of papers. It cannot be substituted for the original bond, but over-reaches and annuls it; and with the bond the original mortgage falls. To contiue it would be to make it secure a larger and different indebtedness than it was intended or it is possible for it to secure.

To transfer its lien to the new mortgage is to enlarge its original force and effect.

The note and bond are so entirely different in every respect that it is impossible to substitute one for the other, no matter if such had been the intention of the parties. So the new mortgage is totally distinct from the old one. To substitute the note for the bond to the amount necessary to pay the purchase money still due is to sever one obligation, expressed in one set of words, into two

contracts of distinct considerations, attaching certain equities to one that are not pretended for the other.

4. Nor can it operate as an equitable assignment of the original mortgage, subrogating McCracken to the rights of the vendors thereunder and entitling him to any equity precedent to the appellant's right of entire dower.

1. All authorities on dower hold that subrogation will not avail against dower in behalf of a party paying off the purchase money encumbrance, who stands in such relation to the husband as in legal effect to make such party both mortgagor and debtor, whose duty it is to pay and discharge such encumbrance. Where the husband conveys land, and by the terms of the purchase the vendee is to satisfy the encumbrance for the purchase money over the land, such satisfaction is made by the husband and lets in dower.—*Bolton* vs. *Ballone*, 13 Mass., 227; *Carter* vs. *Goodin*, 3 Ohio, 75–78.

Where the grantee of the mortgagor subsequently purchases the mortgage, such purchase is an extinguishment.— *Coates* vs. *Cheever*, 1 Cow., 460; *James* vs. *Morag*, 2 Cow., 301; *Forbes* vs. *Maffett*, 18 Ves., 390; *Gardner* vs. *Astor*, 3 Johns. Ch., 53.

Payment of such encumbrance by administrator of the husband will let in dower.—*Barker* vs. *Parker*, 17 Mass., 564; *Eaton* vs. *Simonds*, 14 Pick., 98; *Wedge* vs. *Moore*, 6 Cush., 8.

Executor or administrator is required to pay such encumbrance from personal assets for the benefit of widow's dower.—*Keckley* vs. *Keckley*, 2 Hill Ch., 250; *Henegan* vs. *Harlee*, 10 Rich. Eq., 285.

Even when such party, upon payment of such encumbrance, demands an assignment, and it is refused because deemed to be unnecessary, the encumbrance is extinguished.

2. Nor will it avail in behalf of a party who does not sustain such relation to the husband and who pays such an encumbrance for which he is not personally bound and which is not a charge upon his property.— *Wilkes* vs. *Harper*, 1 Coms., 586; *Gadsden* ads. *Brown and Wellsman*, Speer Eq., 41.

And even where such party pays such an encumbrance and actually takes an assignment thereof, it will be construed to be an assignment or extinguishment of the encumbrance according to the intention of the parties.—*Brown* vs. *Lapham*, 3 Cush., 551.

3. Subrogation avails alone in behalf of a party who was bound to pay the encumbrance solely for his own relief and did so.

When the purchaser of the equity redeems, the widow must contribute.—1 Scribner on Dower, 495, 68.

Where, one of two vendees having died, the survivor pays off their joint mortgage for the purchase money, he is subrogated to one-half of the mortgage, and his claim is paramount to dower of deceased vendee.—*Id.*, 466, § 12.

Where one of several interested in an equity of redemption is willing to redeem, he must pay the whole mortgage debt, and in such case is considered assignee of the mortgage, and as standing in place of the mortgage as to the others interested.—*Gibson* vs. *Crehore.*

These cases but enforce the general and established principle of subrogation and are fully sustained by all authorities on the subject. In our own case of *Gadsden ads. Brown & Wellsman,* (Speer's Eq., 41,) the principles governing the application of this equity are clearly set forth. In that case, the party paying the mortgage was a third and disinterested party, and did so upon the agreement that he should be refunded his advance out of the proceeds of the future sales of the negroes bound by the mortgage, and upon this payment the mortgagee released most of the negroes bound, and the party making the advance took a mortgage of the negroes to secure himself.

Yet he was held not to be entitled to be subrogated to the rights of the original mortgagee and take precedence of a subsisting mortgage over some of the negroes in it.

The following strong language is used by the Chancellor:

"The doctrine of subrogation is a pure unmixed equity, having its foundation in the principles of natural justice, and, from its very nature, never could have been intended for the relief of those who were in a condition in which they were at liberty to elect whether they would or would not be bound, and, as far as I have been enabled to learn its history, it never has been so applied. If one with perfect knowledge of the facts will part with his money, or bind himself by his contract in a sufficient consideration, any rule of law which would restore him his money or absolve him from his contract would subvert the rules of social order. It has been directed in its application exclusively to the relief of those that were already bound, who could not but choose to abide the penalty."

Again: "But I have seen no case, and none has been referred to in the argument, in which a stranger, who was in a condition to

make terms for himself and demand any security he might require, has been protected by the principle."

II. Neither the Koon note nor the McCracken mortgage is a bar to appellant's right of homestead.

1. Homestead prevails against "any debts or liabilities, except such obligations as are provided for in the Constitution."—Con., Art. I, § 20.

The only obligations so provided are "obligations contracted for the *purchase* of the homestead or the erection of improvements thereon."—Con., Art. II, § 32.

There can be but one contract for the purchase of a homestead, and that is the original contract therefor between the vendor and vendee for the price agreed upon. The Koon note is not such a contract.

2. Koon cannot be subrogated to the rights of the executors for the cash portion of the purchase money.

· See foregoing authorities as to McCracken's rights of subrogation.

*Caldwell,* contra, filed the following points and authorities:

I. The facts found by the Circuit decree must stand as the facts of the case, to which this Court is bound to restrict itself, and which it cannot permit to be contradicted, except by the record itself; for the appellant has neglected or declined to procure a statement of the case, either by the Circuit Judge or by consent of counsel. She must, therefore, abide by the statements of the decree, which she has not heretofore sought to alter or add to.

II. It is conceded by the respondents that the appellant is entitled to dower in the lands in question, subject only to the debt of her husband to the respondent, Langdon C. McCracken. It is denied that she is entitled to the homestead exemption as against either the demand of L. C. McCracken or that of Henry Koon.

III. As to the claim of Henry Koon barring the right of homestead. It is true that he did not sell the land to the deceased husband and head of the family, but he furnished the money which made the first payment on the purchase of the land,—the money without which, as far as we can see, the purchase could not have been effected,—the money which it was most strictly contracted should be applied to the payment for the land, and to no other purpose. If the note given by Calmes to Koon for that sum of

money is not one of the "obligations contracted for the purchase of said homestead," intended in the Constitution of 1868 and the Acts of the Assembly, it will be very difficult to say what kind of an obligation it is. It certainly comes within the terms of the Constitution and the Acts.

And it is submitted that the language of the Constitution and the Acts in regard to the homestead exemption should be liberally construed towards the creditor. The exemption is an innovation upon our system of laws and in opposition to the spirit of the laws of all nations. Men are by no means agreed upon the propriety of protecting even a debtor's body from the demands of his creditor. It is probable that property is exempt from debt nowhere in the world except in the United States, nor exempt in all of them. Such exemption is therefore peculiar and exceptional; and it therefore rests upon any one claiming it to establish, beyond a reasonable doubt, that the exemption claimed is provided for by the necessary construction of the law.

IV. In the absence of decisions expressly upon this point, we should be guided by the decisions upon the right of dower as affected by mortgages in connection with the purchase money; for as a mortgage of lands for the purchase money will defeat the claim of dower, so does a debt for the purchase of property defeat the claim of homestead in that property.

Now, it is held that if one party purchase land of a second party, and a third party advance the money to make the purchase and take a mortgage of the land from the first party, the widow of the first party shall have no dower as against that mortgage,—the mortgage being considered just the same as if it had been given to the vendor of the land.

In *Kettle* vs. *Van Dyck*, (1 Sandf. N. Y. Ch. R., 76,) it is held that if A conveys a farm to B, who, on the same day, receives from C the amount of the purchase money, pays it to A and executes to C his bond and mortgage of the farm for the sum advanced by C, the mortgage is really given for the purchase money of the farm, and, therefore, that the widow of B is dowable only of the equity of redemption.

Such, also, is the ruling in *McGowan* vs. *Smith*, (44 Barb., 232). B, who was in possession of land, under agreement to purchase, sold it to M, and an arrangement was made by which B's vendor, upon receiving what was due him from B, conveyed the property

to M, and M executed a mortgage to B for the balance due the latter: *Held,* a mortgage for the purchase money, which excluded dower.

In *Clark* vs. *Munroe,* (14 Mass. R., 351,) where A purchased, with property or money, of B, a minor, a tract of land, and took a conveyance of the vendor and then mortgaged the land to C, B's guardian, to secure the payment of the money or property furnished him to effect the purchase, and C assigned the mortgage to B, who entered and foreclosed, it was decided that A's widow had no dower.

In *Jackson* vs. *Austin,* (15 Johns., 477,) the same principle is declared, it being there held that a mortgage executed by the purchaser of lands to the third party advancing money to make the purchase shall have the same preference over prior judgments and other claims-against the purchaser as would attach to a mortgage executed by the purchaser to the vendor to secure the payment of the purchase money.

If such rights belong to a person advancing money to effect a purchase of lands in which dower is claimed, it is quite clear that equally powerful ones attach to one advancing the purchase money of lands in which homestead is claimed; for, surely, the modern invention of homestead is no more elevated and sacred than that ancient right which is ranked with life and liberty.

V. It is submitted that the claim of the respondent, L. C. Mc-Cracken, excludes both the homestead exemption and the dower claimed by the appellant. And this position is based upon the ground that the mortgage upon the land, executed by the appellant's husband to McCracken, is a perfect and effectual substitute and continuation of that executed previously by the husband to the executors of Sondley for the credit portion of purchase money of the land.

It will not be denied that the claims both of homestead and dower were subject to the mortgage given to the executors of Sondley. It cannot be denied that McCracken insisted, as a condition of advancing the money to take up that mortgage, that he should be placed exactly in the position occupied by the executors of Sondley. It cannot be denied that he insisted upon having an assignment of the mortgage held by the executors, and it is equally undeniable that Calmes assented to such an assignment. It is also certain that the only thing which prevented such an assignment

was the advice of the counsel for all parties, who thought that the assignment by the one executor present would not be valid. It is just as clear that the money was advanced by McCracken and the new mortgage taken for the express purpose of transferring to Mc-Cracken all the rights formerly vested in Sondley's executors by their mortgage. It is beyond controversy that Calmes fully concurred in the effort to put McCracken entirely in the place occupied by the executors of Sondley. And it is ascertained that McCracken paid the money into the hands of Sondley's executors directly in order to receive from him the rights that he enjoyed.

If equity considers not the form but the substance of things; if it will reform and complete imperfectly executed instruments; if it will connect the separate, disconnected parts of agreements, so as to make of the most formal and absolute conveyance only a pledge; if it will set aside the most solemn acts upon grounds of fraud, accident or mistake; if it will substitute one instrument for another, as in case of new notes given in payment of old ones, and give to the new all the powers of the old, as in the case of a note secured by mortgage being substituted by a new note; it is quite clear that it may place in an obligation given to a new party who takes up an obligation held by another all the qualities and powers of the old obligation taken up.

The term *subrogation* is not technically applicable to this case for that is considered to apply to cases where the party is already bound; but it is insisted that it is a case of substitution of instruments. Certainly the executors of Sondley could have assigned their mortgage to McCracken and enabled him to sue upon it in his own name and enforce all the rights they had. It is also certain that Calmes could have substituted a new mortgage to those executors, in the place of the old one, and given it all the force of the old one. What, then, prevented him from executing a mortgage to McCracken which should entirely take the place of the one to the Sondley's?

In *McDonald* vs. *McDonald*, (16 Vt., 630,) in *Bolles* vs. *Chauncey*, (6 Conn., 389,) and in *Burton* vs. *Pressley*, (Cheves' Eq., 1,) it is held that a new note given in substitution of an old note secured by mortgage shall have all the benefits of the mortgage. In *Hinson* vs. *Pickett*, (1 Hill's Ch., 38,) it is held that a distributee advancing money to pay the debt of his ancestor shall, without any assignment of the debt, be subrogated to all the rights of the

creditor against the estate. In *Wardlaw* vs. *Grey*, (2 Hill's Ch., 644,) it is held that where a guardian settled with his ward by giving him a promissory note, the promissory note shall rank as a specialty against the estate of the guardian, by reason of the guardianship bond, of which in equity it took the place. The note in that case was given before the majority of the ward, but it was retained, and the settlement upon which it was given affirmed by the ward after coming of age. In the *United States* vs. *Crookshanks*, (1 Edw. Ch., 233,) it is held that where a mortgage has been canceled without payment, and, in pursuance of an agreement made at the time of cancellation, another mortgage has subsequently been substituted, either by the mortgagor or his heirs, it will be a continuation of the first mortgage, except, of course, as to intervening rights.

If the new mortgage in our case had been a subsequent arrangement, as in the case of *Gage* vs. *Ward*, (25 Maine, 101,) we could not claim for it the status of a mortgage for the purchase money; but here the new mortgage was executed according to a previous arrangement that it should in all respects take the place of the first mortgage and operate as a mere transfer of the first mortgage to new hands. No time elapsed between the two instruments, for the satisfaction of the old one in itself created the new. The mortgagor never touched the money that changed hands. McCracken himself placed the money in the hands of Sondley's executors. No rights could possibly intervene between the two instruments. The encumbrance was never for an instant removed. Calmes was only the conduit by which a mortgage passed out of the hands of Sondley's executors into those of McCracken. And this is just the state of affairs stated in our case of *Douglass* vs. *Dickson* (11 Rich., 417,) as that which would effectually bar dower.

The case of *Gadsden* ads. *Brown & Wellsman* (Speer's Eq., 37,) is not parallel with ours; it lacked that ingredient which is the soul of McCracken's claim, viz., the purpose, agreement and attempt to put the new mortgagee in the shoes of the old. And Chancellor Dunkin, in delivering the opinion of the Court of Appeals, says: "There was no agreement that he (Gadsden) should be subrogated to their (the original mortgagees') rights as mortgagees." In our case there was that agreement; and upon that, and the instrument executed to carry it out, we stand.

If it be true, as stated in appellants' brief, that the new note bears a higher rate of interest than the old,—which, however, is not admitted,—the case is not materially affected. The new mortgage should stand good against both dower and homestead for the amount that would now be due on the original mortgage, which may be very easily ascertained.

Also, the following additional points:

VI. In addition to the positions heretofore taken by the respondents, it is submitted, in behalf of the mortgage held by the said L. C. McCracken, that that mortgage of the real estate here in question having been executed by G. W. Calmes, the husband of the appellant, in his lifetime, it must prevail, to the exclusion of the appellant's claim of homestead in the said land; or, rather, that the appellant's right of homestead is subject to the payment of the mortgage debt and can only be allowed in what shall remain of the land, or its proceeds, after the payment of the mortgage.—*Homestead Association* vs. *Enslow*, 7 S. C., 1.

October 31, 1876. The opinion of the Court was delivered by

MOSES, C. J. The facts of the case may be thus briefly stated: In January, 1870, the land in question was sold by the executors of Sondley at public outcry and purchased by George W. Calmes, the husband of the appellant,—the terms being one-half cash and for the balance a credit of one year with interest, secured by bond and a mortgage of the premises.

The cash portion was paid to the vendors by Calmes with money borrowed from the said Henry Koon, to whom Calmes gave his note therefor, with two sureties. On this note judgment was obtained against the principal in 1871.

After the credit portion of the purchase money fell due, Calmes, on the 16th day of January, 1871, borrowed from the said S. C. McCracken the money with which it was paid. On offering payment, the latter said he wanted an assignment of the bond and mortgage, but, only one of the two mortgagees being present, his counsel advised that a valid assignment could not be executed by him alone, and suggested "that a mortgage of the premises after the payment, executed by Calmes, with a note at the same time specifying the consideration to be a loan made for the payment to the Sondleys of the balance of the purchase money, would be just

as good." Accordingly, Calmes's note was taken by McCracken for the amount loaned, payable at twelve months, including cost of stamps and expense of mortgage, to bear interest at twelve per cent. per annum; that on the original bond was at the rate of seven per cent. Calmes departed this life on 23d February, 1872, leaving his widow, Frances Ann, the appellant, and an infant daughter.

Through proceedings in the Court of Probate for Newberry County, to which Koon and . McCracken were parties, the said Frances Ann claimed, on behalf of herself, dower in the said land, and for herself and child a right of homestead, both of which were allowed by the said Court.

On appeal to the Circuit Court by the respondents here, the decree of the Probate Court was affirmed so far as it sustained the claim of the widow to dower as against the judgment of Koon, and modified as to the mortgage of McCracken by restricting such claim to the excess of the land, or the funds derived from its sale over and above the amount necessary for .the satisfaction of the mort-gage, and rejecting the claim of homestead, except as to such .amount as may remain from the proceeds of the sale of the land after satisfying the debts of both Koon and McCracken. From the decision below, the said Frances Ann appeals to this Court.

We will first consider whether the judgment of Koon can prevail against the right of homestead claimed by the appellant as the head of a family. She occupies that relation, and, as was held in *In re Kennedy*, (1 S. C., 227,) and *Bradley* vs. *Rodelsperger*, (3 S. C., 226,) may lawfully demand the provision conferred by the Consti-tution, unless the obligation through which it is proposed to debar her is of the class enumerated in that instrument as sufficient for the purpose. With this view, it is contended that the note given by Calmes to Koon for the money which paid the cash portion of the purchase money of the land was "an obligation contracted for the purchase of said homestead," which, under the Constitution, renders the land liable to the debt, and to that extent excludes the right of homestead.

In our view, the proposition is not supported either by the letter or the spirit of the Constitution. The contract here referred to and intended is that through which the land was purchased, and the obligation must arise from its force and effect. It was a provision for the benefit of the vendor, for without it, if the purchase money was not paid, or secured to be paid, a judgment which he might

afterwards recover on the debt so created might be defeated by the interposition of the right of homestead by the debtor. It was to secure the credit given on the purchase; but here, so far from there having been a credit as to this portion, the cash was actually paid to the vendors, and the only credit was as to the other half, for which they took a mortgage of the premises conveyed. If for the cash portion there was nothing due, there could be no "obligation contracted for the purchase." There was no privity between the executors of Sondley and Koon by virtue of which any contract arose for the money loaned by the latter to Calmes. There is no evidence that the executors even knew the source from which the money paid to them was obtained. Koon did not look to the land for the payment of his loan, but to the note with sureties which he took on making it. He is in no wise a creditor by reason of any contract for the purchase, and it is only in favor of such a creditor that the constitutional exemption can apply. In our judgment, the right of homestead, as claimed, is not affected by the judgment of Koon.

The next question to be considered involves the right of McCracken to bar the appellant of her dower in the land mortgaged to him by her husband. The respondent contends that his mortgage is to have the full force and effect of the one which was originally executed to the executors of Sondley so far as relates to the demand thus made; and as the right of dower in that could only have extended to any surplus remaining after the satisfaction of the whole debt due on the note which it was to secure, it can prevail only to the same extent as against the mortgage held by McCracken.

While it is admitted that the equity insisted upon is not enforceable on the principle of subrogation, it is contended that it must avail, and is sustainable through the rule which applies to the substitution of instruments. It might be enough to say that the application of the doctrine here fails in a very essential element, to wit, the fact of substitution. No new mortgage was executed to the executors of Sondley in the place of the one they held, and on which satisfaction in due form was entered. Substitution implies an act between the same parties, through which, by agreement, something is accepted in lieu of something given up,—and generally they are of equal value,—the one filling the place of the other. In the case at bar, the contract between the parties is made manifest

by the note which Calmes executed to McCracken. The considera-
tion expressed on the face of it was the amount of money received
by the maker of the payee as a loan, "which was applied to the
payment of the purchase money due on lands purchased by me"
[the maker] "of the estate of Richard Sondley, deceased." The
time of payment was extended to twelve months. The amount was
for a greater sum than that due on the original bond, and at a
largely increased rate of interest. In regard to the case of *Burton*
vs. *Pressly*, (Chev. Eq., 1,) cited by the counsel of the respondents
as confirming the rule for which he contended, it must be remem-
bered that "another note of precisely the same tenor and date was
executed in the place of the one given up." Here a note of a
different date and for a different amount was given, not to the
original mortgagees, but to a third person, who made the loan
which satisfied the mortgage before the note on the new considera-
tion was made to him.

It may have been understood by J. R. Sondley, the only one of
the mortgagees present, and the said McCracken and Calmes, as it
was supposed by the counsel of the former, that the course adopted
continued the new mortgage as a subsisting lien on the land to the
amount of the note which it was given to secure; but an equity so
arising between the said parties cannot interfere to defeat inter-
vening legal rights.

Whereas in the cases of *Clark* vs. *Monroe*, (14 Mass., 351,) and
*Jackson* vs. *Austin*, (15 Johns., 447,) cited on the argument, the
purchase money was paid by a third person, the title made to the
purchaser and a mortgage by him at once given to the party
advancing the money, it was properly held that the wife had no
more claim to dower than if the conveyance being made to the
husband he had at once executed a mortgage to the grantor for the
purchase money. The seizin in him in the instance first stated was
but transitory, to enable him effectually to do what by his contract he
had undertaken and promised. But here, on the satisfaction of the
mortgage to the executors, the seizin of the land was in him and
the right of the wife to her dower vested. As is said by Parker,
C. J., in *Bolton* vs. *Ballard*, (13 Mass., 230,) "although in one view
this might be considered a seizin for an instant, yet it is to be taken
in connection with the former seizin, which, although affected by
the rights of the mortgagee, was always in force against every other
person, and when those rights ceased to exist the estate was as if it

---

had never been encumbered." To whatever extent the enstrument may prevail as between McCracken and Calmes to secure the right it proposed to the latter, it cannot bar the dower of the widow, who was neither a party to it or either affected with notice of the transaction.

The mortgage, however, must be held to exclude the appellant from her claim of homestead in the premises which it covers, except as to what may remain of their proceeds on sale for foreclosure, after satisfying the amount due upon it.—*Homestead Association* vs. *Enslow,* 7 S. C., 1.

It is ordered that the Clerk of this Court certify to the Probate Court for the County of Newberry the judgment of this Court, that such further orders may be there taken in conformity therewith, and any other orders necessary for matters in the case not disposed of.

*Wright,* A. J., and *Willard,* A. J., concurred.

---

HEARD APRIL TERM, 1876.